You're on. Good morning, Your Honors. My name is Brooke Michelson. Here on behalf of the petitioner, Agave Snapian. I'm here today with my colleagues, Victoria Diaz and Maria Mendoza. We are law students at the University of Arizona James E. Rogers College of Law, and we are supervised today by Dean Jordan Curtis. I will address this court as to the issues surrounding jurisdiction and exhaustion, and my colleagues will address this court as to the issues surrounding due process and credibility. Your Honors, this is a case about unfair surprises. On the very day of the consolidated hearing, without prior notice, the government produced DHS reports indicating that Agave's documents were allegedly fraudulent. The government had these reports for months, yet on page 120 of the record, the government admitted that it was their office policy for asylum cases to produce the files on the very day of the consolidated hearing. Agave was unsettled, she was unprepared, and she was prejudiced as a result. With regard to jurisdiction, the Real ID Act revitalized this court's jurisdiction for constitutional claims and questions of law. Did she ask for a continuance? No, but she objected to the production of the DHS reports on two grounds. The answer to my question is no. Correct, Your Honor. The answer is no. Did the IJ say anything about a continuance? Before her objection, she had told the government's attorney that she would not reset the case. With regard to jurisdiction, the timeliness of Agave's asylum application raises a question of law because it involves the application of law to an undisputed fact, namely, Agave's arrival date into the United States. With regard to exhaustion, this court has held that when the BIA chooses to address an issue I thought that is disputed, but, and I don't know that it's worth spending a lot of time on jurisdiction, but, because isn't the basic point more of a due process point that there was an allegation that the NTA had an allegation about her entry date? Correct, Your Honor. And so now they're trying to say that that wasn't it. I mean, is that what's going on here? Well We had an allegation about the entry date. It was a timely date. Correct, Your Honor. The government charged in its notice to appear that Agave entered the United States on September 26, 1999. Agave admitted the charge and, in fact, produced evidence that her husband was outside of the United States the day prior. The government never later contested that date. Agave then filed her application for asylum on November 9, 1999, well within one year of her entry into the United States. Under Hacopian v. Mukasey, the arrival date became an undisputed fact that relieved Agave of her burden of producing clear and convincing evidence of the timely filing of her asylum application. Her filing was timely and, therefore, the I.J. Erd and rendering a contrary determination. Not only was Agave's application for asylum timely, but the untimely production of the DHS reports were in violation of due process and deprived Agave of a full and fair hearing. And that's what you're saying? To me, the real problem in this case is that it seems like a serious due process violation for them to come up with this thing at the last minute and she didn't have any time to deal with it and whether, I mean, the other alternative to a continuance would have been just not accepting the document. But what about all the other evidence in the record that suggests, that supports the conclusion? I mean, is this just harmless? It doesn't matter? In other words, he relied on the fraudulent documents fairly peripheral. But aside from the fraudulent documents, there was plenty of evidence, was there not, that at least supported the conclusion that, in fact, they were Armenian, not Iranian? Well, Your Honor, I think it's important to distinguish between the substantial evidence standard which governs the adverse credibility determination and the de novo standard overview which governs the due process violation here. I mean, the evidence standard, had Aghavni had notice of the DHS reports, there were a number of things that she could have done to indicate that she was from Iran. I understand that. And he probably shouldn't have considered it at all and it's not clear he considered it much. But what about why shouldn't we just deny the petition on the ground? I mean, let's back out the report saying that the documents were fraudulent and he still had plenty of basis for his conclusion. No, Your Honor, because we don't know what Aghavni would have produced had she been given adequate time. Well, suppose she would have proved up the documents. Well, had she proved up the documents, it's likely and is our contention that her claims would have been meritorious and she would have been accountable. But why wouldn't she have presented that evidence anyway? Pardon? I don't understand why it is being surprised by the forensic evidence explains why she wouldn't have presented evidence that she was from Iran, not Armenia. That was a known question. Why wouldn't she have automatically presented whatever evidence she had with regard to her nationality? She did, Your Honor. She was unaware. She testified consistently that she was unaware that her documents were allegedly fraudulent. Is there any evidence you're suggesting that she held back and didn't produce because she was surprised? It seems to me she would have produced whatever she had to produce. And Judge Berzon's question is whether this is harmless error. I thought I heard you say, well, she had evidence she could have produced to demonstrate her nationality. But it seems to me she would have produced whatever she had. Why would she have held anything back from the proceeding? Your Honor, to answer the remainder of your questions, I'd like to turn it over to my colleague, Maria. Are you prepared to answer that question? Yes, sir. Good morning. My name is Maria Mendoza, and I'll be addressing the rest of your due process, the due process violations occurring on the day of the consolidated hearing. Aghavani testified in the record. Let me come back to my question then. Yes. Why wouldn't she have presented whatever evidence she had with regard to her nationality? What was it in this forensic evidence that caused her to draw back? Or why wouldn't she have produced it anyway? Your Honor, I believe that she would have if she had understood what was coming within the DHS forensic reports. In the record, Aghavani testified that she could have entered into Iran legally when the IJ questioned her. Whether or not she had legal documents to enter into Iran, she could have secured that documentation if she had known about the unfair surprise that awaited her on the day of the consolidated hearing. There were other factors in the record that suggested that Aghavani could have presented further documentation to bolster her claim and to bolster that she was indeed a citizen and national of Iran. For example, on page 130 of the record, Aghavani testified that as a youngster she attended Armenian schools in Iran. Aghavani could have produced documentation showing that she attended those schools in Iran. On page 147 of the record, Aghavani testified that she retained an attorney in Iran after she was beaten in front of her children and her family for allegedly attempting to convert a Muslim child into a Christian. Now, did she think her case was such a slam dunk that she didn't need to gather this evidence and be prepared to present it on the day of the hearing? I don't know. I'm assuming that Aghavani believed that she had adequate supporting documentation. She submitted a number of documents, including a birth certificate of her own that was not tested for authenticity, as well as church documents and birth certificates for one of her children. She also testified as to the facts that gave rise to her claim of persecution. And under that standard— Because she could have thought that the documents she submitted were conclusive, at least as to her and the one child, if they were in question. It's possible that she did believe that the documents were conclusive. But I think the real issue here is that the IJ's perspective on Aghavani's credibility was tainted by the untimely disclosure of the DHS reports. Suppose the BIA had said, we agree, it was totally inappropriate to spring this on the petitioner at the last moment. Sure. So we're going to set that aside and ignore all that evidence, and we're going to look at the remainder of the record. Would the remainder of the record compel the conclusion that she's entitled to asylum? It's our contention that, yes, it would have, and that the IJ was not able to look at the remainder of the record that Aghavani had presented because the IJ's perspective as to Aghavani's credibility was tainted by the untimely disclosure of the DHS reports. I've stated a number of things that Aghavani could have submitted, and I've also alluded to things that Aghavani did submit. All those things go to her nationality. Sure. It's obviously a logically prior question to everything else. Sure. And when she walked in there, presumably not knowing that anybody was questioning these documents, she didn't have any reason to produce anything else, I assume, because if, in fact, her child, she and her child were both born in Iran, and if, in fact, these documents, search documents from Iran were what they said they were, presumably nobody would have bothered with her. Maybe, although there were still these weird facts, like they all spoke Armenian, they didn't speak Farsi, the children had, a lawyer had represented that one of the children was Armenian, the children had represented they were Armenian, and so on. Sure. Let me answer your question. I think it's threefold, and I see that I'm running out of time. Do you mind if I continue? Sure. It is our contention that Aghavani submitted the documents that she had, and if she had known about the untimely disclosure of the DHS forensic report, there were a myriad of documents that she could have submitted to cure the allegations found within the DHS report. It is true that there were statements allegedly made by the children that the IJ used as a means of undermining Aghavani's credibility. For example, there's a statement that the IJ relies on, on Gavork's attorney, where he allegedly admitted that Gavork is allegedly a citizen and national of Armenia. What do you mean allegedly? That's on the record someplace, isn't it? I'm sorry, that's correct, Your Honor. That motion was made in connection with the motion to change venue, and it is customary that when an attorney makes a motion to change venue, oftentimes all facts must be admitted. More importantly, on page 196 of the motion. I don't understand what you mean by that. It's often the custom that when an attorney makes a motion to change venue, all facts must be admitted, and it's plausible. What do you mean all facts must be admitted? The facts in the case are admitted to in order to consolidate the cases. You can't change venue without conceding removability? You can, but it's sometimes a practice that all facts are admitted, and it's our contention that we believe that that's one reason why Gavork's attorney may have made these statements. It's also more important, tellingly, that Gavork testified on page 199 of the record that he had never saw or really met with an attorney. And on page 161 of the record, Aghavani testified that she had primarily consulted with the attorney and that she told the attorney that she and her children were all born in Tehran, Iran. What the issue here boils down to, and our contention is, is that the IJ was not able to credit these plausibilities, the possibility that Gavork never really made this statement because the IJ's perspective as to Aghavani's credibility was tainted by the untimely disclosure of the DHS forensic reports. I think we've got your argument well in hand. You're over your time. We'll give you a little bit of time for rebuttal. Thank you, sir. I appreciate it. Thank you for your argument. Ms. Morrow? May it please the Court? The principal issue in this case is the adverse credibility finding and whether or not it was supported. Well, why is the principal issue the due process violation? Do you concede it was a due process violation? Due process? No, I mean, as far as the DHS reports, no. So the DHS had forensic reports in hand prior to the hearing that said that the documents that the petitioner was relying upon were fraudulent. That is correct. How long had they had that forensic report? The Christianity reports, I believe, were in July, and then the birth certificate, I believe, they had received in late November. And when was the hearing? It was in January. So for a month or so, they had the full set of forensic reports indicating that these documents may be fraudulent. That is correct. And also, they didn't have anybody available for cross-examination. So even if she had been willing to go forward at that point, there was nothing useful she could do. She had no means of producing her own expert. She had no means of cross-examining the person who wrote the report. That is true. And as the immigration judge in America ---- Was that a due process violation? Well, as the government stands, it was harmless error as the ---- That's a different question. It isn't what I asked you. I asked you whether you agree there was a due process violation. Well, the petitioner has failed to show, I mean, if there in fact was, which the government contends that there wasn't, that ---- Why do you contend that there wasn't? She had, well, especially with the birth certificate that went in there, they had initially sent them in for the ability to transfer their child down, and they knew they were going to be cross-referenced and checked for truthfulness. Suppose that it wasn't a forensic report, but the government had a witness who had known these people all their lives and was prepared to testify for the government that they were, in fact, Armenian and were not Iranian. Could they withhold that fact from the petitioner until the day of the hearing? No. I'm sure the government wouldn't be allowed to do that. Okay. And if they did that and the petitioner asked for continuance or the IJ decided there shouldn't be a continuance, would that be a problem? No. I mean, of course. However ---- Well, how is this different? Well, as it was noted in the record, there was no continuance given, or, I mean, or asked for or requested. The judge peremptorily said there will be no continuance. Isn't that correct? He said to the government counsel that he wouldn't grant a continuance. It's a she, isn't it? I'm sorry. I apologize. Yes. So what's the difference between withholding a material witness and withholding a forensic report that says your petition is based upon lies? Well, I guess there would be very minimal difference between there. Maybe the way to start is to say assuming there was a due process violation. Well, assuming there was a due process violation, the actual reports themselves as the immigration judge, after admonishing court counsel and then moving forward, gave them very limited weight as far as the rest of the record evidence, the fact that there were two conflicting stories being told by the family members and the fact that there were parts of the record that the immigration judge was just confused about. But isn't this the problem in terms of prejudice? There were facts that cut against her with regard, you know, seriously cut against her with regard to whether they were Armenian or Iranian. But if these documents were credited, wouldn't that have been fairly conclusive as they were accurate documents of what they represented to be? Wouldn't that have been fairly conclusive with regard to her explanation why the other information that suggested they were Armenian was not to be relied upon? Well, assuming that they were being able to discredit it, I mean, petitioners have not presented any evidence. In other words, what I'm saying is this. In impugning her credibility with regard to everything else she was saying, and not being corroborative of what else she was saying, why wasn't she severely prejudiced simply because she came in there thinking, well, I don't have any problem proving I'm Armenian. I have these documents. I mean, I'm Iranian. I have documents that simply by themselves prove I'm Iranian. So she didn't have any reason to come up with anything else. And moreover, she didn't have much reason to worry about the counter evidence because she had these documents showing she was born in Iran. So if they were valid documents, doesn't the whole case take a completely different complexion? Well, not necessarily. In other words, you're talking about whether he was relying on them, their fraudulence. But what about the absence of their affirmative proof that she was, in fact, Iranian? But then they would respectfully then, even if they were deemed to be true, there would still be conflicting evidence with his son's testimony before the asylum officer, with his father signing the bond hearing that said that he was removable to Armenia. But they had explanations for all that. If they had a hard piece of paper saying that the boy was born in Iran and it was credited, that would be the end of it, no? Well, there would still be conflicting. Then he came with his own testimony stating that he was from Armenia. Furthermore, the family members even stated that they didn't even know or have personal contact with where they got those from. All right. But given the standard for a due process violation, i.e., what you have to prove in terms of prejudice, isn't this it? I mean, in other words, at that point, she would have had an awfully good argument at a minimum that she was Iranian. The government respectfully states that the evidence of the record, even excluding those on there, would still be significant enough to compel the conclusion. It would still be significant enough, but would it have been conclusive? The immigration judge found that looking at that evidence, that it was compelling enough to find her incredible. Even if it were conclusive, and frankly, what I've looked at in the record leads me to be highly suspicious of the claim as well. But the immigration judge did not disregard the forensic evidence. His decision specifically referenced it at some length. Can we say that it was harmless error if, in fact, we can't tell whether he would have reached the same result without that evidence? I mean, you can theorize that let's just pretend that evidence wasn't there. We're going to disregard the forensic evidence because it should have been identified to Petitioner before. But do we really know what the immigration judge would have said because he did reference the forensic evidence so much in his decision? No. I mean, I can't hypothesize or speculate as to what the immigration judge would have said. Well, we're not supposed to make the decision. The agency is. If we can't tell what the agency's decision would have been without that evidence, is it appropriate for us to just assume that the immigration judge would have reached the same decision, or are we supposed to remand and let him make that decision? Well, the government stands that the error was, in fact, harmless. And we support the decision based on the remaining evidence, even if it weren't on record. The fact is that even if they are not proved, and the government, as he had stated before, has used these cases and these types of reports to some degree in order in proving whether the document. But this isn't. What is it that you're saying is harmless? The forensic report or the not crediting the documents that were submitted? He said they're not the same. In other words, and because he did two things. He presumably did not rely on the documents that she submitted, and he used the forensic report as some implication of her overall credibility. But the first one seems to me to be the real problem. If this forensic report weren't there or were self-discredited, the whole case looks different. Well, respectfully, as I stated, the government finds that based on his reliance and the wealth of evidence in the record, that there was a harmless error and not necessarily a full due process violation requiring remand. Okay. Thank you for your argument. Thirty seconds. Very brief rebuttal, Your Honors. We can presume that Agave and her counsel thought that the documents that they had produced were sufficient. Otherwise, certainly Agave's counsel would have instructed her to gather more documents. Second, Justice Hawkins, as you noted, there's no difference between withholding material witness and the DHS reports here. The untimely disclosure of the DHS reports were damaging, and the case would have looked very different had they not been introduced. The I.J. had two options here. The I.J. could have sua sponte granted a continuance to permit Agave to gather additional documents, or the I.J. could have excluded the evidence. The I.J. did neither, and it was not a harmless error. And for these reasons, we ask that this court remand. Thank you. Thank you. And although I love the title, we're all judges up here. The case just argued will be submitted for decision, and we'll proceed to the third case on the argument calendar.
judges: Hawkins, Berzon, Clifton